IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

BBCM, INC. and BBSW, L.L.C.,

Plaintiffs,

vs.

HEALTH SYSTEMS
INTERNATIONAL, LLC,

Defendant.

No. C10-0086

REPORT AND RECOMMENDATION

---

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      A.   Background Information. . . . . . . . . . . . . . . . . . . . . . . 3
      B.   The Asset Purchase Agreement. . . . . . . . . . . . . . . . . . 3
      C.   The Earnout Period. . . . . . . . . . . . . . . . . . . . . . . . . 7
           1.   Year One. . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.   Year Two. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.   RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Motion to Compel Arbitration and Stay

Proceedings (docket number 13) filed by Defendant Health Systems International, LLC

("HSI") on September 20, 2010, the Resistance (docket number 15) filed by Plaintiffs

BBCM, INC. and BBSW, L.L.C. (collectively "BBCM") on October 7, 2010, and the Reply (docket number 17) filed by HSI on October 14, 2010. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

This case was initiated on June 30, 2010, with BBCM filing a Complaint (docket number 1) against HSI for breach of contract (Count I), promissory estoppel (Count II), and breach of implied covenant of good faith and fair dealing (Count III). BBCM's claims arise from an "asset purchase agreement" executed by the parties. In response to BBCM's complaint, on September 20, 2010, HSI filed the instant motion to compel arbitration and stay proceedings (docket number 13). HSI asserts that litigation in this matter is premature and, in accordance with the agreement entered into between the parties, their dispute should be settled under an "accountant remedy" found in the agreement.[1]

---

[1] Although the parties do not address the issue, the Court must first consider whether it may rule directly on HSI's motion to compel arbitration and stay proceedings, or if it must make a report and recommendation to the District Judge. Courts are split on whether a motion to compel arbitration should be treated as dispositive, in which case a magistrate judge may only issue a report and recommendation, or a matter within the statutory authority of a United States Magistrate Judge to resolve by order. *Compare Coxcom, Inc. v. Egghead Telecom*, 2009 WL 4016629, *1 (N.D. Okla. 2009) (finding that a motion to compel arbitration should be resolved by a report and recommendation to the trial judge) *with Schreiner v. Credit Advisors, Inc.*, 2007 WL 2904098, *12, n.5 (D. Neb. 2007) (providing that a motion to compel arbitration is non-dispositive because parties must return to district court to have an arbitration award confirmed, modified, or vacated under 9 U.S.C. §§ 9-11) (citing *Herko v. Metro. Life Ins. Co.*, 978 F. Supp. 141 (W.D.N.Y. 1997)). In this case, the disputed arbitration clause in the contract between the two parties is governed by Iowa law, and the agreement provides that the determination of the accountant arbitrators will be final and binding on the parties. Therefore, out of an abundance of caution, the Court will issue a report and recommendation on the motion to compel arbitration to the District Judge.

## III.  RELEVANT FACTS

### A.  Background Information

This case arises out of the sale of a business.  In April 2008, HSI agreed to purchase substantially all of the assets of a medical case management business owned and operated by Kathleen Bass ("Bass") and Kevin Babb ("Babb").  The business was comprised of two entities, Bass & Babb Case Management, Inc., an Iowa corporation with its principal place of business located in Osceola, Iowa, and Bass & Babb Southwest, L.L.C., an Iowa limited liability corporation, and wholly-owned subsidiary of Bass & Babb Case Management, Inc.  The business provided a variety of cost containment services in the workers' compensation field, including medical case management, vocational counseling for injured workers, assistance for employers and injured employees in helping the employees return to work, bill review, utilization review, and other services in the workers' compensation field.

HSI is an Indiana limited liability corporation with its principal place of business located in Indianapolis, Indiana.  Upon being acquired by HSI, Bass & Babb Case Management, Inc. changed its name to BBCM, INC., and Bass & Babb Southwest, L.L.C. changed its name to BBSW, L.L.C.  Bass and Babb continued to run BBCM pursuant to employment agreements with HSI, which were executed at the same time as the purchase agreement.[2]

### B.  The Asset Purchase Agreement

On April 17, 2008, HSI and Bass & Babb Case Management, Inc. and Bass & Babb Southwest, L.L.C. entered into a "First Amended and Restated Asset Purchase Agreement" ("the Agreement") for the purchase of Bass & Babb Case Management, Inc. and Bass & Babb Southwest, L.L.C. by HSI.[3]  HSI agreed to pay for the acquired

---

[2] Bass and Babb were terminated by HSI on May 17, 2010.

[3] The Agreement is filed under seal at docket number 5.

business by a cash payment at the closing and by "earnout" payments based on profitability over a four-year period following the transaction.[4] The amount of the annual earnout payment is based on BBCM reaching a certain target "EBITDA" in each of the four years.[5] If the target EBITDA is met in a particular year, the Sellers are entitled to a specific amount of money for that year, plus 50% of any additional EBITDA in excess of the target. For example:

> (I)  Year One Earnout Amount. If the Purchaser achieves Two Million Two Hundred Thousand Dollars ($2,200,000) of EBITDA (the "Year One Target EBITDA") during the one (1) year period immediately following the Closing Date (the "Year One Measurement Period"), the Sellers shall receive One Million Six Hundred Sixty-Two Thousand Five Hundred Dollars ($1,662,500) (the "Year One Partial Earnout Amount"), and after the achievement of the Year One Target EBITDA, the Sellers shall receive fifty percent (50%) of any additional EBITDA generated in excess of the Year One Target EBITDA during the Year One Measurement Period (the "Year One Uncapped Earnout Amount")[.] . . .

See First Amended and Restated Asset Purchase Agreement, Section 1.06(a)(i), at 6.

The Agreement describes the process by which the EBITDA will be established for a particular year:

> (i)  Within thirty (30) days after the receipt of the final financial statements of the Purchaser for the applicable Earnout

---

[4] See Section 1.04 of the Agreement.

[5] The Agreement defines EBITDA as follows:
> "EBITDA" shall mean earnings before interest, Taxes, depreciation and amortization generated by the Acquired Business excluding any extraordinary items of gain or loss. EBITDA shall be determined by the independent certified public accountants engaged by the Purchases for purposes of its own audit and in accordance with the applicable provisions of Section 1.06(e).

See First Amended and Restated Asset Purchase Agreement at 54.

Measurement Period, the Purchaser shall prepare and deliver to the Sellers a report (the "Earnout Report") containing such audited year-end financial statements of the Purchaser which will reflect all or a portion of the applicable Earnout Measurement Period and setting forth the Purchaser's calculation (including, but not limited to, the Purchaser's computation work and reasonable supporting documentation) of the EBITDA for such Earnout Measurement Period. Upon providing reasonable advance written notice to the Purchaser, the Sellers (and their representatives) shall be provided reasonable access to the books and records of the Business and the Purchaser's work papers during regular business hours at the offices of the Purchaser solely for the purpose of verifying the calculation of the EBITDA.

*See* Asset Purchase Agreement, Section 1.06(c)(i), at 8.

If BBCM objects to HSI's calculation of the EBITDA, then BBCM is required to provide HSI with a "detailed written statement" explaining its objections to the "Earnout Report."[6] Upon timely delivery of objections to the EBITDA calculation to HSI, the parties are to "use commercially reasonable efforts to resolve any such disputes[.]"[7] If a "final resolution" is not obtained within 30 days of delivery of objections to the EBITDA calculation, however, then the dispute "will be resolved by the Accountants in accordance with the procedure set forth in Section 1.05(c)."[8] Section 1.05(c) explains that BBCM's unresolved objections to HSI's EBITDA calculation for a given year will be resolved by accountants from Ernst & Young. The remainder of Section 1.05(c) sets forth the procedures for additional evidence being provided to the accountants, and payment for the accountants' services.[9]

---

[6] *See* Section 1.06(c)(ii) of the Agreement.

[7] *Id.*

[8] *Id.*

[9] *See* Section 1.05(c) of the Agreement.

Additionally, the Agreement includes covenants and agreements which HSI promised to conduct itself by during the four-year earnout period. Specifically, Section 1.06(e) provides in pertinent part:

> (e) <u>Conduct of Acquired Business During Earnout Period.</u> During the Earnout Period, the Purchaser shall abide by the following covenants and agreements unless waived by Bass:
>
> . . .
>
> (iv) The Purchaser shall operate the Acquired Business in a good faith manner such that the Purchaser nor the Acquired Business shall take any action primarily aimed at artificially decreasing EBITDA or precluding achievement of payment in full of the Earnout amount.
>
> . . .
>
> (vi) The Purchaser shall not change or alter in any material respect the line of business in which the Acquired Business operates in as of the Closing Date.
>
> (vii) The Purchaser shall use reasonable efforts to exploit new business opportunities which are related to the Acquired Business.

*See* First Amended and Restated Asset Purchase Agreement, Section 1.06(e)(iv), (vi)-(vii), at 10-11. BBCM also claims that during the course of negotiating the Agreement, HSI "repeatedly assured [BBCM] that if HSI purchased the Acquired Business, there would be no changes in the business practices of the Acquired Business, promising that 'the business you run today will be the business you run tomorrow.'"[10]

---

[10] *See* BBCM's Complaint (docket number 1) at 7, ¶ 17.

### C. The Earnout Period

#### 1. Year One

In the first year of the earnout period, BBCM achieved the "Year One Target EBITDA," exceeding $2,200,000 of EBITDA. Accordingly, HSI paid BBCM $1,662,500 – the "Year One Partial Earnout Amount." HSI also paid BBCM an additional payment – the "Year One Uncapped Earnout Amount" – for exceeding the "Year One Target EBITDA."

#### 2. Year Two

On March 29, 2010, two days before the end of the second fiscal year, BBCM's counsel sent HSI a letter, stating BBCM's concerns that "certain actions that have been taken during the fiscal year ending March 31, 2010, have had a negative impact on the earnings of the Acquired Business, and constituted breaches of the express covenants set forth in the Agreement, as well as the spirit of the Agreement including the implied covenant of good faith and fair dealing."[11] Specifically, BBCM alleged in the letter that HSI breached the agreement and covenant of good faith and fair dealing by: (1) directing BBCM to use a new system as the "primary PPO network" for BBCM's bill review services, resulting in a loss revenue; (2) negotiating an unfavorable "ACS contract," resulting in increased network costs; and (3) failing to provide BBCM with "accurate and detailed financial information," resulting in unexpected expenses due to accounting errors.[12] According to the letter:

> [BBCM is] providing [HSI] with this information in anticipation of the calculation of the Year Two Earnout Amount. It is [BBCM's] expectation that the foregoing breaches will be considered when HSI determines the EBITDA for the fiscal year ending on March 31, 2010, in order to

---

[11] *See* Exhibit A attached to HSI's Reply in Support of Its Motion to Compel Arbitration and Stay Proceedings (docket number 17) at 1-2.

[12] *See Id*. at 2.

increase the EBITDA to the level that would have been
achieved if no violations of the covenants had occurred.
Please be advised that if HSI fails to address these concerns
when computing the Year Two Earnout Amount, [BBCM] will
not only object to such computation, but will also be prepared
to provide the necessary Indemnification Notice with respect
to the Year Two Earnout Amount.

*See* Exhibit A attached to HSI's Reply in Support of Its Motion to Compel Arbitration and
Stay Proceedings (docket number 17) at 3.

On May 19, 2010, BBCM received the Year Two earnout report from HSI. The
report provided that BBCM did not achieve the "Year Two Target EBITDA" of
$2,500,000, and BBCM was not entitled to payment of $1,662,500, the "Year Two Partial
Earnout Amount." Instead, BBCM was entitled to a lesser payment based on the terms
of the agreement.[13] On June 30, 2010, BBCM timely objected to the earnout report
provided by HSI.

Also on June 30, BBCM filed the Complaint in this action. In its Complaint,
BBCM alleges: (1) breach of contract (Count I), based on HSI's conduct in year two of
the earnout period, including imposing changes to the business resulting in lost revenue,
entering into financially disadvantageous contracts, and diverting business revenues to
another company controlled by HSI; (2) promissory estoppel (Count II), in that BBCM
acted to its substantial detriment in reasonable reliance on HSI's representation that it
would permit BBCM to operate as it had operated before being acquired by HSI, but HSI
failed to comply with its promise, and imposed operational changes that resulted in a
reduction of earnings; and (3) breach of the implied covenant of good faith and fair dealing
(Count III), in which HSI "evaded the spirit and common purpose" of the Agreement and
BBCM's "justified expectations."

In lieu of an answer to BBCM's Complaint, HSI filed the instant motion to compel
arbitration and stay proceedings. HSI contends that BBCM's Complaint is improper

---

[13] *See* Section 1.06(a)(ii) of the Agreement.

because BBCM's claims concern the calculation of EBITDA and, under the agreement, such claims should be submitted to accountants from Ernst & Young for resolution. According to HSI:

> [D]espite the plain language of [the Agreement], BBCM refused to submit the disputes to the Accountants, instead asserting a litigation position that breaches of covenants were not part of the Accountant Remedy process. However, pursuant to [the Agreement], the allegations complained of by BBCM are directly related to the calculation of earnout, and must be followed before [] any earnout payment becomes due. . . . Thus, the dispute has arisen regarding the calculation of the earnout, this matter should be submitted to arbitration (the Accountant Remedy), and the lawsuit should be stayed pending resolution of the Accountant Remedy.

*See* HSI's Brief in Support of Its Motion to Compel Arbitration and Stay Proceedings (docket number 13-1) at 4.

## IV. DISCUSSION

The parties agree that Iowa law governs the construction and enforcement of the Agreement. Under Iowa law, an arbitration provision in a written contract "is valid, enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract." *See* Iowa Code § 679A.1(2). If an agreement includes a valid arbitration provision, then the Court must order the parties to proceed with arbitration and stay the pending litigation. *See* §§ 679A.2(1) and (4). "However, if the opposing party denies the existence of a valid and enforceable agreement to arbitrate, the district court shall proceed to the determination of the issue and shall order arbitration if a valid and enforceable agreement is found to exist. If no such agreement exists, the court shall deny the application." *See* Iowa Code § 679A.2(1). *See also Gelco Corp. v. Baker Industries, Inc.*, 779 F.2d 26, 28 (8th Cir. 1985) ("The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).

In this case, BBCM concedes that the "accountant remedy" found in the agreement is a valid and enforceable arbitration provision as it pertains to "objections to the calculation of the EBITDA." BBCM argues, however, that the accountant remedy is a limited arbitration provision and has no application to the claims asserted by BBCM in its complaint. That is, BBCM asserts that "[t]he issue before the Court is the scope of the Accountant Remedy."[14]

In *Postville Community School District v. Billmeyer*, 548 N.W.2d 558 (Iowa 1996), the Iowa Supreme Court explained that the "threshold" question in determining arbitrability is "whether the parties agreed to settle the disputed issue by arbitration." *Id.* at 560 (citing *Iowa City Community School District v. Iowa City Education Association*, 343 N.W.2d 139, 141 (Iowa 1983); *Sergeant Bluff-Luton Education Association v. Sergeant Bluff-Luton Community School District*, 282 N.W.2d 144, 147 (Iowa 1979)). Similarly, the Eighth Circuit Court of Appeals states that "[a]rbitration is a matter of contract, and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Crown Cork & Seal Co., Inc. v. International Ass'n of Machinists and Aerospace Workers*, 501 F.3d 912, 916 (8th Cir. 2007) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *International Brotherhood of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace North America, Inc.*, 431 F.3d 624, 627 (8th Cir. 2005) (same); *see also AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-49 (1986) (citation omitted) (providing "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.").

When a contract contains an arbitration clause, there is a presumption of arbitrability. *AT&T Technologies, Inc.*, 475 U.S. at 650. Thus, when an arbitration clause is broadly drafted, arbitration should "'not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

---

[14] *See* BBCM's Resistance to Motion to Compel, ¶ 4 at 2 (docket number 15 at 2).

covers the asserted dispute.'" *Gelco Corp.*, 779 F.2d at 28 (quoting *United Steelworkers of America*, 363 U.S. at 582-83); *see also Sergeant Bluff-Luton*, 282 N.W.2d at 147-48 (providing same, and also quoting *United Steelworkers of America*, 363 U.S. at 582-83). If, however, the arbitration clause is narrowly drawn, then a court should "consider whether the conduct in issue is on its face within the scope of [the arbitration] clause." *Gelco Corp.*, 779 F.2d at 28; *see also Twin City Monorail, Inc. v. Robbins & Myers, Inc.*, 728 F.2d 1069, 1073 (8th Cir. 1984) ("[W]hen 'dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is on its face within the purview of the clause.' Hence, if the arbitration agreement cannot reasonably be construed to cover a particular dispute . . . arbitration need not be compelled.") (quoting *McAllister Bros. v. A & S Transportation Co.*, 621 F.2d 519, 522 (2d Cir. 1980)).

HSI argues that BBCM's allegations of breach of contract and breach of the implied covenant of good faith and fair dealing are subject to the accountant remedy found in Sections 1.05(c) and 1.06(c)(ii) of the Agreement. Specifically, HSI argues that:

> Pursuant to the clear mandates of the [Agreement], the Accountant Remedy is the proper, contractually agreed-upon vehicle to resolve this dispute. The Accountant Remedy is intended to resolve "any objections" BBCM may have to the calculation of EBITDA included in [the] Earnout Report. Because each of BBCM's allegations are in fact objections to the calculation of EBITDA included in the Earnout Report, BBCM has contractually committed to the mandatory and binding Accountant Remedy procedures.

*See* HSI's Brief in Support of Its Motion to Compel Arbitration and Stay Proceedings (docket number 13-1) at 7.

BBCM argues, on the other hand, that its claims are unrelated at the calculation of the EBITDA, and are not subject to arbitration. Section 8.11 of the Agreement provides that BBCM "may pursue any available legal or equitable relief against [HSI] for a breach or violation of Section 1.06." Section 1.06 is lengthy, and extends for approximately six

11

pages in the Agreement. Subsection (a) of section 1.06 refers to the calculation of earnout amounts, subsection (b) refers to an earnout adjustment formula, and subsection (c) describes the "objection process" for the earnout reports. It is subsection (c) which refers to the accountant arbitration provision which HSI claims is applicable here. That is, Section 1.06(c)(ii) provides that if the parties are unable to resolve their dispute regarding "the calculation of EBITDA," then it "will be resolved by the Accountants in accordance with the procedure set forth in Section 1.05(c)."

HSI's argument ignores the fact that BBCM is not contesting the "calculation" of the earnout amount. Rather, BBCM specifically asserts in its complaint that HSI has breached those covenants and agreements found in subsection (e) of Section 1.06. Significantly, subsection (e) does not contain language similar to subsection (c), which refers disputes to the accountants for arbitration. On the other hand, Section 8.11 specifically preserves BBCM's judicial remedies for a breach of Section 1.06.

HSI directs the Court to *Vertner v. TAC Americas, Inc.*, 2007 WL 2495559 (W.D. Wash.) to support its position. *Vertner* involves a merger agreement in which the defendant agreed to pay the plaintiffs $25,000,0000, minus $4,300,000 as a retained amount, at the closing of the merger. *Id.* at *1. The purpose of the retained amount was to account for post-closing adjustments to the valuation of the company based on the performance of certain contracts that had not been completed at the time of closing. *Id.* At a specified date, the defendant was required to notify the plaintiffs how much of the retained amount would be returned to the plaintiffs, and how much would be retained by the defendant. *Id.* According to the merger agreement, if the plaintiffs disagreed with "any of the information in the notice [of the retained amount] as presented by [the defendant,]" the disagreement would be resolved by accountants. *Id.* The plaintiffs disagreed with the defendant's retained amount calculations, and argued that the accountant remedy was inapplicable because "the accountant review procedure contained in [the merger agreement] was not intended to resolve disputes over whether contracts were

12

executed by [the defendant] in a 'commercially reasonable manner consistent with past practices' as is required under [the merger agreement]." *Id.* at *3. The court disagreed with the plaintiffs' position, finding:

> The current dispute between the parties falls withing the plain language of the arbitration provision of the Merger Agreement. [The agreement] explicitly states that a dispute over 'any' of the information contained in [the defendant's] written notice of adjustment 'shall' be resolved by the dispute resolution procedures contained in [the agreement]. It is clear that the dispute here is over information contained in [the defendant's] written notice of adjustment--specifically, [the defendant's] calculation of its adjustment under § 5.28(c) of the Merger Agreement.

*Id.* at *4. HSI asserts that "BBCM makes the very same argument. The Court in *Vertner* saw through the plaintiff shareholder's linguistic twisting of the plain words of the agreement and ordered arbitration -- as there are similarly no words of segregation in the [Agreement], this Court should also order the mandatory and binding arbitration."[15]

BBCM disagrees with HSI, and argues that the accountant remedy provision found in the Agreement

> is substantially narrower than the one in *Vertner*. The provision here refers to disputes about "calculations of EBITDA" not disagreements about any information. Further, the *Vertner* Court relied upon the fact that the parties' agreement did not distinguish calculation disputes from operation and conduct disputes. The same is not true here. BBCM and HSI expressly agreed that [] claims for breaches under § 1.06 (precisely those raised by BBCM) could be addressed by any available legal or equitable relief.[16]

---

[15] *See* HSI's Brief in Support of Its Motion to Compel Arbitration and Stay Proceedings (docket number 13-1) at 8.

[16] BBCM refers to Section 8.11 of the agreement which provides in pertinent part:
(a) for the avoidance of doubt, it is agreed that the Purchaser

(continued...)

*See* BBCM's Brief in Support of Their Resistance to Defendant's Motion to Compel Arbitration and Stay Proceedings (docket number 15-1) at 22-23. BBCM argues that this case if more analogous to *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1 (1st Cir. 2004).

The dispute in *Fit Tech* arose out of its sale of eight fitness centers to Bally Total Fitness ("Bally"). A purchase agreement executed between Fit Tech and Bally included a purchase price of $14.7 million payable at closing, with two additional payments in amounts that were dependent on the earnings of the eight fitness centers in the two years following the closing. *Id*. at 3. One payment was to be made one year after the closing, and the second payment was to be made two years after the closing. *Id*. The payment amounts were to be based on Bally's calculation of EBITDA. *Id*. If Fit Tech disputed Bally's EBITDA calculations, and a resolution could not be achieved by the two parties, the dispute was to be settled according to an accountant remedy provision. *Id*. A dispute arose between the two parties and a lawsuit was filed in federal court for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id*. at 4. Bally sought to dismiss the lawsuit based on the agreement's requirement that disputes be settled in accordance with the accountant remedy. *Id*. In considering the issues raised by the parties, the Court found:

> The pertinent language of the purchase agreement . . . says that 'any disagreement with respect to the Advance Earn-Out Schedule or the Earn-Out Schedule' will, if unresolved after the protest notice, be referred to the accountants for a 'final'

---

[16](...continued)

> may pursue legal or equitable relief against the Sellers (or either of them) and/or the Shareholders, respectively, for a breach or violation of Sections 10.01, 10.02, 10.03, 10.05, and 13.02 of the Agreement, (b) the Sellers may pursue any available legal or equitable relief against the Purchaser for a breach or violation of Section 1.06[.] . . .

*See* the Agreement, Section 8.11, at 44.

determination. The operational misconduct could, just like ordinary accounting errors, alter the figures in the two schedules and reduce the pay-out. So, Bally seemingly argues, whether operation misconduct occurred is for the accountants to decide.

Absent admissible extrinsic evidence bearing upon intent, a court in interpreting disputed contract language asks what reasonable persons in the position of the parties would ordinarily have intended by using the words in question in the circumstances. . . . By this test, referring the operational issues to the accountants makes no sense.

The phrase 'any disagreement' refers to earning schedules whose components are defined in detail in the purchase agreement in accounting terms: specifically, the EBITDA formula for earnings of the eight centers before certain other costs are taken into account. And, the unresolved disagreements are to be referred to 'accountants.' In context, it therefore makes most sense to read 'any disagreements' as referring to disagreements about accounting issues arising in the calculations that underpin the schedules.

Conversely, it makes no sense to assume that accountants would be entrusted with evaluating disputes about the operation of the business in question. Yes, operational misconduct may well affect the level of earnings and therefore the schedules, but the misconduct itself would not be a breach of proper accounting standards. Nor would one expect accountants to have special competence in deciding whether business misconduct unrelated to accounting conventions was a breach of contract or any implied duty of fair dealing.

*Id*. at 8. The First Circuit Court of Appeals concluded that Fit Tech's claims for breach of contract and breach of implied covenant of good faith and fair dealing claims were not arbitrable to the accountants, and were properly brought before the district court. *Id*. at 8-9.

Here, the parties' agreement contains a narrowly drawn arbitration clause in the form of an accountant remedy. According to the agreement, if the parties are unable to

15

settle any disputes regarding the calculation of EBITDA, then such disputes are to be decided by accountants.[17] However, the Agreement also preserves BBCM's judicial remedies for violations of Section 1.06, which would include breaches of the covenants found in Section 1.06(e), as claimed by BBCM here.

Like the First Circuit in *Fit Tech*, the Court reads the language in Section 1.06(c)(ii) regarding "any remaining matters which are in dispute will be resolved by the accountants" to mean any disputes concerning accounting issues arising from the calculation of EBITDA. *See Fit Tech*, 374 F.3d at 8. Accordingly, the Court determines that operational matters, such as the conduct alleged in BBCM's Complaint – imposing new requirements resulting in lost revenue, entering into financially disadvantageous contracts, and diverting business revenues to other companies – are not encompassed by the accountant remedy set forth in the Agreement. *See id.* ("[I]t makes no sense to assume that accountants would be entrusted with evaluating disputes about the operation of the business in question."); *see also Harker's Distribution, Inc. v. Reinhart Foodservice, L.L.C.*, 597 F. Supp. 2d 926, 939-41 (N.D. Iowa 2009) (finding that an "accountant remedy" requires arbitration of only "accounting issues" and not legal issues regarding non-accounting contractual obligations by the parties); *Blutt v. Integrated Health Services, Inc.*, 1996 WL 389292 (S.D.N.Y. 1996), at *3 (accountant remedy inapplicable to good faith and fair dealing claim even though it was causally related to the computation of the business's adjusted net income); *Powderly v. MetraByte Corp.*, 866 F. Supp. 39, 42-43 (D. Mass. 1994) (finding accounting remedy inapplicable to claim of breach of covenant of good faith and fair dealing because "[i]nasmuch as [the plaintiff's] allegations challenge the defendants' business practices regarding MetraByte, and not the integrity of the accounting techniques used to calculate the Net Operating Profit, the defendants' motion to compel arbitration will be denied.").

---

[17] *See* the Agreement, Section 1.06(c)(ii), at 8-9.

Because BBCM's claims for breach of contract and breach of the covenant of good faith and fair dealing are not related to the accounting techniques for calculation of EBITDA, and BBCM properly brought its claims under sections 1.06(e) and 8.11 of the Agreement, I believe that HSI's motion to compel arbitration and stay proceedings should be denied. *See, e.g., Gelco Corp.*, 779 F.2d at 27 (concluding that while the parties' agreement provided for arbitration of certain disputes, the contract also provided in a separate section for judicial resolution of claims for other breaches of contract).

## V. CONCLUSION

The Court concludes that the accountant remedy set forth in the Agreement between HSI and BBCM is narrowly drawn and relates to accounting issues arising from the calculation of EBITDA. Because the claims in BBCM's Complaint – breach of contract and breach of the covenant of good faith and fair dealing – do not relate to accounting techniques for the calculation of EBITDA, but rather to operating issues, the accountant remedy is inapplicable and HSI's motion to compel arbitration and stay proceedings should be denied.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** the Motion to Compel Arbitration and Stay Proceedings (docket number 13) filed by Defendant on September 20, 2010.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the District Court.

DATED this 4th day of November, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA